IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

LUZ VARGAS,

    Plaintiff,

v.                              Civil No. 02-1592 WJ/KBM

JOSE V. FRIETZE IN HIS CAPACITY AS
C.E.O. OF FAMILIES & YOUTH, INC.,
F.Y.I., RACHEL GARCIA, RUBEN SEGURA,
INDIVIDUALLY AND IN HIS CAPACITY AS MAYOR
OF THE CITY OF SUNLAND PARK, JOHN DOES I - X,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
PLAINTIFF'S STIPULATED MOTION TO DISMISS, DENYING
AS MOOT DEFENDANT SEGURA'S MOTION TO DISMISS,
DENYING IN PART AS MOOT DEFENDANTS' MOTION TO DISMISS
AND DENYING IN PART AND GRANTING IN PART
DEFENDANTS' MOTION TO DISMISS**

    THIS MATTER comes before the Court pursuant to Defendants' Motion to Dismiss for Failure to State a Cause of Action [Docket No. 11] and Defendant Ruben Segura's Motion to Dismiss [Docket No. 14].

**BACKGROUND**[1]

    Defendant Families & Youth, Inc. (FYI) is a New Mexico non-profit corporation. FYI is funded through grants from the state and federal government. At the time of the events alleged in Plaintiff's Complaint, Defendant Frietze was the C.E.O. of FYI and Defendant Garcia was an employee of FYI. Defendant Segura was the Mayor of the City of Sunland Park. Plaintiff was

---

[1] For purposes of these motions, the Court assumes as true the allegations in Plaintiff's Complaint, and this Background is based on those allegations.

employed by FYI from August 1996 until August 2002. Defendant Garcia was Plaintiff's supervisor. In 1999, Plaintiff was elected to the school board for the Gadsden Independent School District. In March of 2000, Plaintiff was elected to the city council for the City of Sunland Park.

Plaintiff alleges that, as part of her job responsibilities with FYI in 1998, she was required to recruit supporters for Martin Chavez who was running for the office of Governor of the State of New Mexico. Plaintiff states she was required to hold a rally at a park and to call "providers" to request that they attend the rally. In October 1998, Defendant Garcia instructed Plaintiff to bring absentee ballots to the Chavez headquarters and charge the mileage to FYI. On election day in November 1998, Defendant Garcia told Plaintiff to use an FYI van to pick up voters. Defendant Garcia also told Plaintiff to tell voters to vote for Chavez because FYI would otherwise lose funding. Plaintiff worked from 8 a.m. to 7 p.m. on election day providing rides to voters. FYI paid Plaintiff for her time as an employee of FYI. Plaintiff complained that it was wrong to have FYI employees campaigning during work hours and using FYI vans. Because of similar complaints from others about the use of FYI vans, Plaintiff was required during the 2000 election to use her own vehicle to pick up voters. During the 2000 elections, Plaintiff was again instructed to tell these voters to vote democratic in order to preserve FYI funding. Plaintiff believed she would be terminated from her employment if she did not actively campaign for particular candidates and recruit voters for these candidates. Thus, she alleges that she performed these political activities under duress.

Defendant Garcia and Defendant Mayor Segura were in constant communication with one another because FYI had a great deal of involvement with the City of Sunland Park. At some

point in time, Defendant Frietze placed paid FYI employees in Sunland Park to help Defendant Segura. These persons did not have an office but worked out of the Sunland Park City Complex. These person held themselves out as volunteers for Mayor Segura; however, these persons were being paid by FYI for their work for Segura. These workers did perform work related to an AIDS prevention program, but worked predominately on projects for Segura that pushed his political agenda.

After Plaintiff became a City Councilor for the City of Sunland Park, she had constant disagreements with Defendant Segura about city policies. In March 2000, Defendant Segura became outraged with Plaintiff because, in her capacity as a City Councilor, she supported the firing of the city clerk who was a friend of Segura's. Similarly, in April 2000, Plaintiff, as a City Councilor, rejected the renewal of a contract for legal services that had been awarded to another friend of Segura's.

On numerous occasions, Defendant Garcia required Plaintiff to use her position as a City Councilor to receive grant money to train providers. Defendant Garcia and her friends and relatives would receive a fee for each of the trainings. Plaintiff did what she could within the ethical guidelines but felt coerced by Defendant Frietze and Defendant Garcia.

In April 2000, Defendant Garcia told Plaintiff that Plaintiff would have to give up one of her elected positions as either a school board member or City Councilor. Plaintiff refused to resign either of these offices because she believed they did not interfere with her work duties at FYI and because she believed she had a constitutional right to hold these offices. Defendant Garcia was upset with Plaintiff for refusing to resign one of her elected positions. In May 2000, Defendant Garcia told Plaintiff to give up her position as a City Councilor, and Plaintiff refused.

In 2001, Defendant Garcia became hostile toward Plaintiff and began accusing her of committing fraud in the context of her work for FYI. In March 2001, Defendant Garcia again demanded that Plaintiff resign from the Sunland Park City Council. In April 2001, Plaintiff met with Defendant Frietze about her difficulties with Defendant Garcia. After this meeting, Defendant Garcia became even more hostile and began altering Plaintiff's time sheets at FYI and ransacking Plaintiff's office at FYI. Defendant Garcia coerced Plaintiff to do things within the context of her employment at FYI that Plaintiff believed were wrong. Defendant Garcia would then reprimand Plaintiff. The harassment continued throughout 2001 and into 2002.

In April 2002, Defendant Garcia sent Plaintiff a memo outlining Plaintiff's deficiencies as an employee of FYI. In June 2002, Plaintiff was told that her performance had improved. In July 2002, Plaintiff took a week off for medical reasons on the advice of her doctor. In August 2002, Defendant Garcia sent Plaintiff a notice of termination informing her that her employment with FYI was terminated effective August 1, 2002.

Plaintiff alleges that Defendants Segura, Frietze and Garcia required Plaintiff to support particular political candidates. Plaintiff also alleges that Segura asked Garcia to pressure Plaintiff to resign as a City Councilor, that Segura, Garcia, and Frietze worked together in an effort to get Plaintiff to resign this office. Plaintiff asserts that she was fired from FYI for political reasons that had nothing to do with her work performance.

Plaintiff alleges that Defendants violated her First Amendment rights. Specifically, she alleges that she had a right of free association and non-association under the First Amendment. She alleges that Defendants Segura, Garcia, and Frietze acted under color of state law because Segura is the Mayor of the City of Sunland Park and because FYI receives state and federal

funding.  Finally, she alleges that Defendants violated her First Amendment rights by requiring her to engage in political activities to maintain her employment.

Plaintiff additionally alleges that Defendants violated 42 U.S.C. Section 1985 by conspiring to force Plaintiff to resign as a City Councilor.

**LEGAL STANDARD**

The standards of review for a motion to dismiss for failure to state a claim are well established.  All well-pleaded factual allegations of the complaint are accepted as true and viewed in the light most favorable to the nonmoving party.  Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999).  All reasonable inferences raised in the pleadings are resolved in favor of the plaintiff.  Dill v. City of Edmond, 155 F.3d 1193, 1201 (10th Cir. 1998).  "A 12(b)(6) motion should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  David v. City and County of Denver, 101 F.3d 1334, 1352 (10th Cir. 1996).  Allegations which state legal conclusions rather than plead material facts are not accorded deference, nor should unwarranted inferences of fact or conclusions of law be drawn from such allegations in order to preclude dismissal.  Ryan v. Scoggin, 245 F.2d 54, 57 (10th Cir. 1957).  The Supreme Court has emphasized that the requirements at the pleading stage are de minimus.  See Swierkiewicz v. Sorema, 534 U.S. 506, 514 (2002) (a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations); Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 104 (1998) (the court must presume that the general allegations in the complaint encompass the specific facts necessary to support those allegations).

**DISCUSSION**

I.   PLAINTIFF'S CLAIM UNDER 42 U.S.C. SECTION 1985

By order filed March 26, 2003 [Docket No. 23], this Court granted Plaintiff's Stipulated Motion to Dismiss Plaintiff's Claim Based Upon 42 U.S.C. Section 1985 (1) [Docket No. 21 and Docket No. 22][2] in which Plaintiff requests this claim be dismissed with prejudice. Defendant Segura's Motion to Dismiss [Docket No. 14] requests that this Court dismiss the Section 1985 claim. As the Court has granted Plaintiff's motion to dismiss the claim, Defendant Segura's motion is moot and will be denied as such. Similarly, to the extent Defendants' Motion to Dismiss [Docket No. 11] seeks dismissal of Plaintiff's Section 1985 claim, it is also moot and will be denied as such.

II.   PLAINTIFF'S CLAIM UNDER 42 U.S.C. SECTION 1983.

Defendants FYI, Frietze, and Garcia filed their motion to dismiss Plaintiff's Section 1983 claim arguing that Plaintiff has failed to state a claim because these Defendants were not state actors and did not act under color of state law. Plaintiff's Response[3] notes that a private party's actions constitute state action under Section 1983 when the private party's actions can be fairly attributable to the state. Plaintiff then argues that the actions of Defendants FYI, Frietze, and Garcia are fairly attributable to the state.

---

[2]This motion was docketed twice.

[3]Plaintiff filed a Response to Defendants' Motion to Dismiss [Docket No. 16] and a Response to Defendant Segura's Motion to Dismiss [Docket No. 17]. Plaintiff's Response to Defendant Segura's Motion to Dismiss [Docket No. 17] is styled as a consolidated response to both motions. By Administrative Order, Misc. No. 92-88, filed May 4, 1992, the United States District Court for the District of New Mexico ordered that a separate responsive pleading be filed for each motion. Plaintiff's consolidated response does not comply with the Administrative Order. However, the Court will consider the arguments in both responses.

There are two elements to a Section 1983 claim.  First, a plaintiff must show that she has been deprived of a right secured by the Constitution and the laws of the United States.  42 U.S.C. § 1983; Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 930 (1982) (citing Flagg Brothers Inc. v. Brooks, 436 U.S. 149, 155-56 (1978)).  Second, she must show that the defendants deprived her of this right while acting under color of state law.  Id.  For the first element, Plaintiff here alleges that Defendants violated her First Amendment rights.  Among the rights protected by the First Amendment are the right of free association and freedom of speech.  The First Amendment itself protects these rights from infringement by the United States, and it is applied to the states through the Fourteenth Amendment.  Thornhill v. Alabama, 310 U.S. 88 (1940).  Thus, in alleging a violation of her First Amendment rights under Section 1983, Plaintiff is alleging a violation of the Fourteenth Amendment.  An element of any claim under the Fourteenth Amendment is state action.  Pino v. Higgs, 75 F.3d 1461, 1464 (10th Cir. 1996) (citing United States v. Jacobsen, 466 U.S. 109, 113 (1984)).

The state action requirement of the Fourteenth Amendment and the "under color of state law" element of the Section 1983 claim are similar and overlapping, but denote two separate areas of inquiry.  Pino, 75 F.3d at 1464.  However, if the state action element is met, the statutory requirement of action under color of state law is also satisfied.  Lugar, 457 U.S. at 935 n. 18.

The state action requirement of the Fourteenth Amendment forbids the government, and the government alone, from engaging in certain activities.  Gilmore v. Salt Lake Community Action Program, 710 F.2d 632, 635 (10th Cir. 1983) (citing Lugar, 457 U.S. at 936).  "The Amendment erects no shield against merely private conduct, however discriminatory or wrongful."  Blum v. Yaretsky, 457 U.S. 991, 1002 (1982).  However, governmental power can

7

be exercised in the absence of an official presence, and the conduct of an otherwise private entity or person is sometimes to be treated as state action. Brentwood Academy v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 295 (2001). The state action requirement reflects judicial recognition of the obligation to "preserve an area of individual freedom by limiting the reach of federal law and avoid the imposition of responsibility on a State for conduct it could not control." Id. at 295; See also Lugar, 457 U.S. at 936-37. Thus, to meet the state action requirement of the Fourteenth Amendment, the conduct allegedly causing a deprivation of a federal right must be fairly attributable to the state. Lugar, 457 U.S. at 937. "[S]tate action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." Brentwood Academy, 531 U.S. at 295.

  The Supreme Court has developed a two-part test for the question of fair attribution. "First, the deprivation must be caused by the exercise of some right or privilege created by the State or a rule of conduct imposed by the state or by a person for whom the state is responsible." Lugar, 457 U.S. at 937. "Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor." Id. In Lugar, the Court characterized the first part of the approach as a requirement that the deprivation be associated with a governmental decision and the second part of the approach as an inquiry into the character of the defendant as a state actor. Id.; Gilmore 710 F.3d at 637. Both parts of the test must be satisfied in order to find that otherwise apparently private conduct is fairly attributable to the state. While a private entity or person might be found to be a state actor, the conduct in question will not be found to be fairly

attributable to the state if it does not amount to a deprivation that is the result of a governmental decision.

In order to determine whether a private person or entity is a state actor, the Supreme Court has articulated several different factors or tests. The "public function" test asks whether the actor is performing a traditional governmental function and is based on the principal that a state cannot avoid constitutional responsibilities by delegating a public function to private parties. Georgia v. McCollum, 505 U.S. 42, 51-53, (1992). The "nexus test" inquires whether there is a sufficiently close relationship between the state and the challenged action such that the action should be attributed to the state. Jackson v. Metropolitan Edison Co., 419 U.S. 345 (1974). The "state compulsion" test asks whether the challenged activity was the result of the State's exercise of coercive power or the State's significant encouragement. Brentwood Academy, 531 U.S. at 296. The "joint action" test applies when a nominally private entity operates as a willful participant in joint activity with the State or its agents. Lugar, 457 U.S. at 941. Finally, the "symbiotic relationship" or "entwinement" test asks whether a state has deeply insinuated itself into a position of interdependence with a private entity; whether the entity has become entwined with governmental policies, or whether the government has become so entwined with the management or control of the public entity that the government and the private entity must be recognized as joint participants in the challenged activity. Brentwood Academy, 531 U.S. at 296; Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1451 (10th Cir. 1995) (citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163 (1972)).

Government funding and regulation, without more, is insufficient to establish that a private person or entity is a state actor. Rendell-Baker v. Kohn, 457 U.S. 830 (1982). Plaintiff's

allegation that FYI receives both state and federal funding will not support a claim under Section 1983.  However, Plaintiff makes several other allegations in her Complaint with regard to a relationship between FYI and the government in addition to her allegation that FYI receives state and federal funding.  Thus, these other allegations of a nexus between FYI and the government must be considered in light of Plaintiff's Section 1983 claim.

Plaintiff's brief in opposition to Defendants' motion to dismiss appears to argue that a private entity can be found to be a state actor for all of its conduct if it is sufficiently enmeshed with the government.  I do not believe this is a correct statement of the law.  In cases addressing private entities as state actors, courts have routinely inquired whether an entity should be considered a state actor with regard to a particular action or specific course of conduct.  See Brentwood Academy, 531 U.S. 288; Jackson, 419 U.S. 345.  I have found no cases that suggest that sufficient enmeshment with the government can cause a private entity to be held to be a state actor for all of its conduct.  Conversely, there are cases holding that state employees acting within the course and scope of their employment are not state actors with regard to certain conduct.  See Polk County v. Dodson, 454 U.S. 312 (1981) (public defender working for state Public Defender office is not a state actor for purposes of Section 1983 when defending his or her client).  Therefore, the allegation that Defendant Frietze, Garcia, and FYI are state actors is not supportable on a general theory that all of their conduct is attributable to the state because of a symbiotic relationship with the government.

Even if it is possible that a private entity or person could be found to be a state actor for all purposes by virtue of a close relationship with the government, the facts alleged here would not show a degree of symbiosis such that FYI, Frietze or Garcia could be found to be state actors

for all of their job related conduct even if all of these allegations are taken as true. Thus, Plaintiff must allege facts that, if proven, would support a finding that a specific allegedly wrongful act is fairly attributable to the government.

Plaintiff's allegation that Defendants forced her to support and actively campaign for a particular political party or a particular candidate is the only allegation expressly included in her Section 1983 claim. This allegation is supported with multiple paragraphs of specific allegations with regard to FYI, Frietze, and Garcia. In a single sentence within the Section 1983 claim, Plaintiff alleges that Defendants Garcia, Frietze, **and Segura** required her to participate in political activities. Because of the minimal notice pleading requirements, this allegation is sufficient to allege state action in order to survive a Rule 12(b)(6) motion. See Cain v. Archdiocese of Kansas City, Kan., 508 F.Supp. 1021, 1026 (D. Kan. 1981) (stating that, in light of the principle that a complaint should not be dismissed if there is any conceivable set of facts which would entitle a Plaintiff to relief, determination of the issue of state action prior to any discovery is not appropriate when there is any chance, however slight, that state action is present).

While the allegation that Plaintiff was forced to participate in political activities is the only allegation expressly used to support her Section 1983 claim, Plaintiff's Complaint generally incorporates all of her factual allegations into the claim. In light of the standards of review on a Rule 12(b)(6) motion, the Court will consider Plaintiff's other allegations to determine whether, if assumed true, Plaintiff could be entitled to relief under Section 1983.

Plaintiff's allegation that Defendant Segura asked Defendant Garcia to pressure Plaintiff to resign her office as City Councilor and that the individual Defendants worked together in an effort

11

to get Plaintiff to resign the office alleges sufficient participation and encouragement by Defendant Segura to allege state action in order to survive the Rule 12(b)(6) motion.

Plaintiff alleges that her employment was terminated for political reasons. Plaintiff's Complaint contains no allegations that Defendant Segura or any governmental entity was in any way involved in this decision. Thus, there is nothing in Plaintiff's complaint that, if assumed true, would make the termination of Plaintiff's employment fairly attributable to the state.

Because Plaintiff has sufficiently alleged state action in her allegation that she was forced to participate in political activity and her allegation that she was pressured to resign her office as City Councilor, Plaintiff's Complaint will not be dismissed for failure to state a claim. However, Plaintiff's allegation that she was terminated for political reasons does not allege state action. Therefore, to the extent her Section 1983 claim is based on this allegation, it will be dismissed.

Defendants' motion to dismiss is based solely on the argument that Plaintiff's Complaint was deficient in that it failed to plead state action. Thus, the Court makes no determination that these allegations, if proven, would amount to deprivations of Plaintiff's constitutional rights. Defendants are not precluded by this ruling from filing further motions to dismiss on other grounds or from filing a motion for summary judgment on any grounds.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendant Ruben Segura's Motion to Dismiss [Docket No. 14] is hereby DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Failure to State a Cause of Action [Docket No. 11] is hereby DENIED IN PART AS MOOT to the extent it moves to dismiss Plaintiff's Claim pursuant to 42 U.S.C. § 1985(1).

IT IS FURTHER ORDERED that Defendants' Motion to Dismiss for Failure to State a Cause of Action [Docket No. 11] is hereby GRANTED IN PART and Plaintiff's 42 U.S.C. § 1983 claim is DISMISSED with regard to Defendants Frietze, Garcia and FYI to the extent it is based on allegations that Plaintiff's employment was terminated for political reasons.

IT IS FINALLY ORDERED that Defendants' Motion to Dismiss for Failure to State a Cause of Action [Docket No. 11] is hereby DENIED IN PART as described above.

_____
UNITED STATES DISTRICT JUDGE